MIGUEL GARCÍA MARTÍNEZ, Plaintiff and Appellee, *v.* POLICARPO OLANO SBERT, ET AL., Defendants and Appellants.

No. 8268. Argued May 8, 1941.—Decided June 27, 1941.

*José E. Díaz* for appellants. *Heriberto Torres Solá* and *Federico J. Pérez Almiroty* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The plaintiff herein brought an action to quiet a title to a servitude of light and view. The defendants opposed the action and after a trial the district court found for the plaintiff as follows:

" . . . that there is a servitude of direct light and view in which the plaintiff owns the dominant tenement and the defendants own the servient tenement, that is, the lots described under letters (*a*) and (*b*) in the third paragraph of the complaint, which servitude shall be recorded in the Registry of Property of San Juan, Second Section, after this judgment becomes final (*firme*); that the building of the shed or garage on defendants' tenement at less than three meters from the boundary line violates the right of servitude recognized herein and the defendants must remove the same to that full distance within thirty days from the time this judgment becomes final."

Feeling aggrieved by that decision, the defendants took the present appeal in which they assign four errors claimed to have been committed by the trial court: in declaring that such servitude existed; in holding that the three windows in the east wall of plaintiff's house were apparent signs of servitude of light and view over defendants' house; in finding that such servitude precluded the defendants from building upon a strip of land three meters wide extending the whole length of the lot; and in failing to adjudge the plaintiff to pay the costs and $200 as attorney's fees.

46

 From the pleadings and the evidence it clearly appears that the Morales–Rodríguez spouses, as the owners of building lots Nos. 72 and 71 of certain subdivision plat, both fronting on Arizmendi Street, Río Piedras, and measuring, Lot No. 72 twelve meters in front, and lot No. 71 ten meters and eighty centimeters in front, decided to and did consolidate them into a single lot by a public deed executed on May 20, 1919, and by the same deed they segregated a portion thereof at the back which they sold to Castor Mulero.

After the segregation, the consolidated property became reduced to a tract with a frontage of 22.80 meters on Arizmendi Street and a depth of 22 meters. Then, on the same day of the consolidation and by means of another public deed, they segregated from it another parcel having a frontage of 9 meters on the street and a depth of 22 meters, with a frame house built thereon, and sold the same to Francisco Ramos who, in his turn, sold it, on November 12, 1921, to Ambrosia R. widow of Torregrosa, and the latter sold it to the plaintiff on June 12, 1928.

The frame house, which measured six meters in front by ten meters deep, had three windows on the left-hand side thereof, such side lying at a distance of one meter from the boundary line of the lot, which adjoined the remainder of the consolidated portion that was sold together with the house built thereon to the Villamil–Márquez spouses on March 3, 1920, and conveyed by the latter on January 9, 1933, to the defendants, who are the present owners. The Villamil spouses built a garage in 1920 at the rear of the lot. Its right side was on the boundary line between the lot and plaintiff's property.

Years passed. The plaintiff rebuilt his house and extended it towards the rear, building two more windows on its left side. Subsequently the defendants rebuilt their garage enlarging its front part. As a result of both extensions in opposite directions a portion of the back part of the left

side of plaintiff's house having windows came face to face with another portion on the right-hand side of defendants' garage and as the garage had been built as far as the boundary line, there was only left between the structures which faced each other a vacant space one meter wide, that is, the plaintiff's alley.

Plaintiff maintains that the garage was built in violation of the easement of light and view which existed in favor of his tenement and burdened the servient tenement of the defendants, and that the latter can not raise on their lot any structure obstructing such easement, at less than three meters from the boundary line and the trial court, as we know, found for him.

There was absolutely nothing agreed upon in the several conveyances of the lots regarding the servitude of light and view. The whole of the alleged right of the plaintiff rests on the existence of the three windows on the left-hand side of his house at the time the segregation and sale were made, in 1919, and on the provisions of Section 477 of the Civil Code, 1930 ed., which reads as follows:

"The existence of any apparent sign of servitude between two tenements established by the owner of both of them, shall be considered, if one of them be alienated, as a title, in order that the servitudes may continue actively and passively, unless, at the time of the division of the ownership of both tenements, the contrary be expressed in the deed of conveyance of either of them, or if the said sign is removed before the execution of such instrument."

After a careful consideration of the facts and of the law, we reach the conclusion that neither the facts in this particular case nor the law applicable thereto has the scope attributed to it by the plaintiff and appellee and recognized by the court.

We fully agree that the existence of an apparent sign of servitude established by the owner of two tenements is sufficient title for the continuance of the servitude if either of

the tenements is alienated. It is so provided by law. The action of the owner, however, can not have a greater scope than it actually has.

What was the action of the owner in the instant case? To build first a frame house 6 meters wide by 10 deep with three windows on its left-hand side on a lot having a frontage of 12 meters on the street; then to consolidate the lot with another adjoining it which also had a frontage of 10.80 meters on the same street and on which he had built another house; and, lastly, on the same day of the consolidation he segregated and sold a portion of the consolidated tenement at the back thereof and another portion with a house thereon, which now belongs to the plaintiff and which measures 9 meters in front and 22 meters in depth. The parcel with a frontage of 9 meters formed part of the original lot which had a frontage of 12 meters and as a result of the reduction from twelve to nine, the side of the house on which the windows were located stood one meter from the boundary with the remainder of the consolidated tenement.

It is from this fact, and from this fact alone, without more, that the plaintiff seeks, by the application of the above legal provisions, to derive his right for preventing the defendant from building upon a strip of land 3 meters wide which extends from the front to the rear of defendant's lot, that is, it is the plaintiff's contention that when the owner of the two lots built the house, which now belongs to him, with the three windows, he constituted in favor of the tenement built upon a servitude of light and view and by subsequently merging the lots into a single tenement and segregating and selling the 9-meter wide parcel with the house thereon, and inasmuch as he failed to wall up the windows or to make any statement to the contrary in the deed of conveyance, the latter carried with it the right of servitude of light and view over the adjoining tenement to the extent indicated.

The mere statement of such claim is sufficient for questioning the legality of the claim. A servitude of that kind constitutes a perpetual lien upon real property, an impairment of the ownership, whose existence can only be recognized where the parties have consciously acted or where the law speaks in such a clear and definite way that there can be no doubt as to its application.

Section 477 of the Civil Code, which is not derived from the old Spanish law, nor from the Roman law, but springs from the Code Napoleon, is not the only provision in said Civil Code regarding servitudes. The whole of Title VII of its Book Second is devoted to them, and Section 518 which forms part of Article Fifth—"The servitude of light and view"—of that title is, in our opinion, the one applicable to the question involved herein. It reads as follows:

"Windows with direct views, or balconies or any similar openings projecting over the tenement of a neighbor shall not be made if there is not a distance of two meters between the wall in which they are built and the said property.

"Neither can side or oblique views be opened over the said property, unless there be a distance of sixty centimeters."

Commenting on Section 582 of the Spanish Civil Code, equivalent to Section 518 of our code, it is stated in 28 *Enciclopedia Jurídica Española* 698 as follows:

"Section 582 and its concomitants 583 and 584, place restrictions not upon the tenement over which they project, but upon the tenement with windows, balconies, or other projections. That is why Mucius Scaevola says that such sections do refer to a servitude, but not of views, in strict legal sense, but *of distances within which to build* with openings."

This is all the scope that can be attributed to the action of the original owner of the lot, which now belongs to the plaintiff, in building thereon the house also owned at present by the latter.

As was said by this court almost thirty years ago, in *Díaz* v. *Guerra,* 18 P.R.R. 790:

"The fact that the owner of the lots on which the houses of the plaintiff and the defendant in the case at bar are built agreed to the plaintiff's constructing his house at a distance of two or more meters from the line separating the lots and to his opening in the wall windows facing the other does not imply in any manner that said proprietor agreed to create upon the other lot a servitude of light and view in favor of the plaintiff's house."

The case of *Illanas* v. *González,* 51 P.R.R. 779, on which appellee lays so much emphasis, is not similar to the case at bar. There the plaintiff sought to prevent the defendant from building certain windows and the district court found for him and ordered the windows to be walled up. On appeal, this court set aside the judgment and held:

"Where the owner of two adjacent estates, in conveying the ownership of one of them in which there exist some windows, apparent signs of a servitude, does not confine said servitude to the ground floor of any building existing in that estate, nor does he limit the number of windows that the purchaser of the estate would have a right to open for the proper enjoyment of his property, the purchaser or his successors in title have a right to build on the lot from the ground up to any height and to provide the buildings thereon with the reasonable number of windows necessary for the use and enjoyment of his property."

It would be the same as if in the instant case the defendants instead of the plaintiff had brought suit against him to compel him to wall up the windows of his house on the ground that they are at a distance of only one meter away from the lot's boundary or to prevent him from building new windows at such distance. In such case the plaintiff, upon being sued, could indeed successfully invoke in his favor the law and the decisions, because the purpose of the original owner in building the windows was to constitute a servitude and when he sold the lot reducing its area the windows remained as the apparent sign of a servitude, rather than of

view and light, of distances for making openings, built by the party entitled to do so at the time, his successors in interest being bound to accept what he did.

This and this only is the right of the plaintiff herein, namely, to keep the windows where they are notwithstanding that it goes counter to the provisions of Section 518 of the Civil Code, but not to encroach upon his neighbor's property and compel him to preserve sixty-six meters of it so that he may enjoy his light and his view.

The judgment appealed from must, therefore, be reversed and another rendered instead in favor of the defendants, but without attorney's fees, for we consider, in the exercise of our discretion, and in view of the attendant circumstances, that the same should not be imposed.

Mr. Justice Todd, Jr., took no part in the decision of this case.